UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

ANGEL BELL,

                          Plaintiff,

           - versus -

THE CITY OF NEW YORK and
UNIDENTIFIED POLICE OFFICERS,
employees of the City of New York Police
Department,

                         Defendants.

MEMORANDUM AND ORDER

13-CV-5317 (JG) (VMS)

APPEARANCES:

    FRED LICHTMACHER P.C.
        350 Fifth Avenue, Suite 7116
        New York, New York 10118
    By:   Fred B. Lichtmacher
        *Attorney for Plaintiff*


    MICHAEL A. CARDOZO
        Corporation Counsel
        100 Church Street
        New York, New York 10007
    By:   Tobias E. Zimmerman
        *Attorney for Defendant City of New York*

JOHN GLEESON, United States District Judge:

        Angel Bell brings this action against the City of New York and unidentified officers of the New York City Police Department based on events that occurred at her home on February 17, 2012. Bell alleges that police officers, after observing two suspects flee into Bell's apartment, unlawfully forced open the door and arrested her. Bell claims that this conduct deprived her of federal constitutional rights, in violation of 42 U.S.C. § 1983. The City has

moved to dismiss for failure to state a claim. For the following reasons, the motion is granted as to the City, but the case will continue to the extent that Bell makes claims against individual officers.

BACKGROUND

The only facts before me are those alleged in the Complaint, ECF No. 1, which I assume to be true on the City's motion to dismiss. *See, e.g., Freidus v. Barclays Bank PLC*, 734 F.3d 132, 135 (2d Cir. 2013).

On February 17, 2012, at around 5:00 pm, Bell was returning from work to her home, an apartment building in Brooklyn. With her were her nephew and infant daughter. Compl. ¶ 9, ECF. No. 1. "Two young men from the neighborhood suddenly entered the Plaintiff's home through her unlocked front door, locking it behind them. Apparently, the young men were wanted by the Police, and police officers" – the unnamed individual defendants in this case – "thereafter began banging on Plaintiff's door." *Id*. ¶ 10. The officers also knocked on neighbors' doors, and then went outside the building. *Id.* ¶ 11. Bell asked the two young men why they had come into her home, and they apologized and said they would leave when the officers left. *Id*. ¶ 12. Bell looked through her window, and a police officer shouted at her to open her door. The police then attempted to break down her front door, bending the frame and drilling through the peep hole to fully open it once it was knocked off its hinges. *Id*. ¶ 13. The two young men opened the door; Bell, afraid because of a recent murder in the building, "called 911 to find out what was going on." *Id*. ¶ 14. The police, with guns pointed "at everyone, including [Bell's] nephew," told everyone to lie on the ground. *Id*. ¶ 15. The officers then "confined" Bell and arrested her, along with the two men. *Id*. ¶¶ 16-17. She was brought to a jail cell, and then to Central Booking; she was ultimately released the next evening, after

prosecutors declined to bring any charges against her. *Id.* ¶¶ 18-20. When she returned home, she noted that, in addition to the damage to the door, her daughter's bed was broken and items were misplaced. *Id.* ¶¶ 13, 21.

## DISCUSSION

A. *The Standard of Review*

The City moves to dismiss for failure to state a claim on which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In deciding the motion, "I must assume the truth of all well-pleaded factual allegations, draw all inferences in the light most favorable to [the plaintiff], and grant the motion only if the complaint so viewed fails 'to raise a right to relief above the speculative level.'" *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 367 (E.D.N.Y. 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "However, 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Dupree v. Local 32BJ*, No. 10-CV-1894 JG, 2010 WL 3430530, at *2 (E.D.N.Y. Aug. 30, 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

B. *Analysis*

1. *Municipal Liability*

The City argues that, whether or not the individual officers may be held liable for their conduct, Bell has not plausibly alleged that the officers' actions were caused by the municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Without such a policy or custom attributable to the City, it may not be held liable.

Beyond the facts of the November 17, 2012 incident, Bell's Complaint does set forth several allegations designed to support a claim for municipal liability. Among other allegations, Bell asserts that the City "intentionally operates an ineffective" Civilian Complaint Review Board and Internal Affairs Department, each of which "operates for the purpose of wrongfully exonerating and failing to substantiate legitimate claims against officers," Compl. ¶¶ 30-31; and that it is "the routine practice of NYPD officers" to both "stop and search members of New York's minority communities in their homes" and to "place members of New York's minority communities under arrest without probable cause." *Id*. ¶¶ 33-34. Bell also alleges what are essentially legal conclusions – for example, that the Department is deliberately indifferent to the problems mentioned above. *Id*. ¶ 35.

Bell's allegations that the officers acted under a City policy or custom are the sort of boilerplate "facts" that are insufficient under *Iqbal*. Although Bell asserts a widespread policy or custom that encompasses the incident she personally experienced, her supporting allegations lack specificity and do not show a connection to the facts of her incident. Other allegations are properly characterized as legal conclusions. When the non-specific and conclusory allegations are pared from the Complaint, what remain are the specific facts surrounding the November 17, 2012 incident that Bell alleges to have personally experienced. And indeed, even before *Iqbal*, the rule in this Circuit has been that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quotation marks omitted). The City's motion to dismiss is therefore granted.

    2.    *Individual Officers*

Although the individual officers have not yet been identified, much less served, the City has asserted that, given Bell's allegations, the officers should be protected against suit by § 1983's qualified immunity doctrine. As the Second Circuit has recently explained,

> Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.

*Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir. 2012) (internal quotation marks, citations, and alterations omitted). The objective reasonableness of the official's conduct is a mixed question of law and fact. *Id*.

In general, a party may assert only his, her, or its own rights.[1] The unidentified officers have not moved to dismiss the claims against them; only the City has. Although it is within the inherent power of a district court to dismiss frivolous claims, *see, e.g., Walcott v. United States*, 13-CV-3303, 2013 WL 5708044, at *4 (E.D.N.Y. Oct. 18, 2013), I cannot say at this point that Bell's claims – which implicate serious constitutional rights and factual circumstances that are far from clear – are frivolous. To the extent that the officers, once they have been properly served and given notice of the claims against them, wish to move to dismiss on grounds such as failure to state a claim or qualified immunity, they will be permitted to do so.

---

[1] It appears that, in addition to asserting qualified immunity on behalf of the officers, the City may also be arguing that because the officers should be afforded qualified immunity, the claims against the City should also be dismissed. If the City is indeed making that argument, it is mistaken. It is true that a municipality cannot be liable under *Monell* unless the plaintiff is harmed by the illegal act of a municipal employee. But a municipality may be liable for adopting an illegal policy or custom even though the individuals implementing that policy or custom are immune because none of them violated *clearly established* law. *See generally Askins v. Doe No. 1*, 727 F.3d 248, 253-54 (2d Cir. 2013). A contrary rule would effectively extend qualified immunity from individuals to municipalities.

It would be premature for me to address now either the sufficiency of Bell's allegations or any claim of qualified immunity those officers choose to assert.

## CONCLUSION

For the reasons given above, I grant the City's motion to dismiss Bell's claim against it, but I deny the motion insofar as it seeks dismissal of claims against the individual unnamed police officers.

At argument, counsel for the City stated that he had obtained the names of the individual officers involved in the incident and agreed to provide those names to Bell. Plaintiff's counsel also stated that he wished to add additional factual allegations to the Complaint. Therefore, I grant Bell leave to file an amended complaint, which must be filed by Friday, December 27, 2013.

So ordered.

John Gleeson, U.S.D.J.

Dated: December 4, 2013
 Brooklyn, New York